IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| DONALD BONUCHI and CINDY BONUCHI, ) | Case No. 04-21387-drd-7 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| JANICE A. HARDER, Trustee, ) | Adversary No. 04-2044-drd |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| HARTFORD LIFE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

Pending before the Court is an objection filed by Janice A. Harder, Trustee ("Trustee") to the claim of debtor Donald Bonuchi ("Debtor") to exemption in an annuity issued to him by defendant Hartford Life Insurance Company ("Hartford Life" or "Defendant"). Also before the Court for resolution is the Trustee's parallel complaint against Hartford Life for turnover of the proceeds of the annuity policy and an order requesting that those proceeds be paid to the Trustee as amounts are due and payable under the policy. The Court previously issued its Memorandum Opinion holding that the annuity proceeds were not subject to exemption in their entirety as Debtor had claimed, but only "to the extent reasonably necessary for the support" of the Debtor and any of the Debtor's dependents, pursuant to Mo. Rev. Stat. § 513.430(10)(e). The Court convened a hearing to take evidence on the Debtor's financial condition and the extent to which the amounts payable under the annuity might be necessary for support of the Debtor and his dependents. A Stipulation of Facts, filed earlier in the case, is also a part of the record. This Court has jurisdiction over

these proceedings pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). These are core proceedings, pursuant to 28 U.S.C. § 157(b)(2)(B) and (E) which this Court may hear and determine. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to these proceedings by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that the annual annuity payments due Debtor under the policy are, in part, reasonably necessary for the support of the Debtor and his dependents and therefore overrule the Trustee's objection in part and sustain it in part.

## I. FACTUAL BACKGROUND

Debtor sustained an injury while in the course and scope of employment at Premium Standard Foods ("Premium") on February 14, 1995.[1] Debtor filed a workers' compensation claim with Premium and a civil action against Premium's insurance carrier, Hartford Fire Insurance Company ("Hartford Fire"), alleging various tort claims related to the injury and the settlement of the workers' compensation claim.[2] The workers' compensation claim and the tort action were resolved by a compromise settlement approved by the Missouri Department of Labor and Industrial Relations on March 26, 1998 ("Settlement Agreement").[3]

Pursuant to the Settlement Agreement, Hartford Fire purchased an annuity from Hartford Life. Hartford Fire is the owner of the annuity, Hartford Life is the issuer and Debtor is the designated

---

[1] Stipulation of Facts ("Stipulation"), ¶ 4.

[2] Stipulation, ¶ 5.

[3] Stipulation, ¶ 5.

payee.[4] The Settlement Agreement provided for a lump sum of $200,000 payable on March 26, 1998; a monthly annuity of $2,144.93 payable for the life of Debtor commencing on May 13, 1998; four annual payments of $10,000 beginning on July 13, 2005; and four annual payments of $10,000 beginning on July 13, 2006.[5]

On June 4, 2004, Debtors filed a bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code.[6] In their Amended Schedule C, Debtors claimed the entire value of the annuity exempt pursuant to Mo. Rev. Stat. §§ 407.1062, 513.427 and 287.260.[7] Trustee filed an objection to the claimed exemption for the annuity as well as an adversary proceeding against Defendant for turnover of the annuity funds as they come due.[8]

As noted above, in a previous Memorandum Opinion, this Court denied the Debtor's claim that the remaining payments due under the annuity are exempt in their entirety and held that the payments are exempt only to the extent that they are reasonably necessary for the support of the Debtor and his dependents. At the evidentiary hearing, Debtor submitted schedules of income and expenses (Schedules I and J) filed with the petition, which reflect monthly income of $2,114.93, all of which comes from the monthly payments made by Defendant under the annuity policy, and estimated monthly expenses of $2,127.95. There is no cost of living increase built into the monthly payments. Debtor

---

[4]Stipulation, ¶ 7.

[5]Stipulation, ¶ 8.

[6]Stipulation, ¶ 1.

[7]Stipulation, ¶ 2.

[8]Stipulation, ¶ 3.

testified that he is not working, as a result of the disability suffered in the accident which gave rise to the action resulting in the issuance of the annuity policy. His wife is also not working, according to the Debtor, as the result of numerous medical conditions of her own. He testified that neither of them is likely to be able to work in the near future. The monthly income derived from the payments from the annuity policy is approximately equivalent to the amount of the household's monthly expenses.

Debtor and his wife have two children, a son age 18 and a daughter age 16. Their son, Steven, has been admitted to Missouri Western College in St. Joseph for the 2005-2006 academic year beginning in the fall. Debtor introduced into evidence a letter from the college's financial aid department estimating the annual cost of Steven's attendance at Missouri Western and offering certain alternatives for meeting that cost.[9] According to that document, the anticipated total cost of his attendance for the academic year is $13,475.00 which consists of tuition and fees, room and board, books and supplies, personal and miscellaneous, as well as travel expenses. Neither the Debtors nor Steven propose to make any contribution toward that expense. Steven is eligible for a Federal Pell Grant and Federal Supplemental Educational Opportunity Grants in the total amount of $4,550.00. Loan programs are available to the Debtor and his wife to cover the resulting balance of $8,925.00, but Debtor testified that they do not plan to apply for any of those loans. As noted above, the annual payments due the Debtor on the annuity in the amount of $10,000 commence in July of 2005 and continue for four years thereafter with an additional stream of payments of $10,000 annually commencing on July 13, 2006 and running for four years thereafter. Debtor testified that at the time the annuity was purchased and the

---

[9]Debtor's Ex. 1.

payment schedule established, it was created specifically with the financial requirements of his children's college educations in mind. Debtor also testified that he expects his daughter to attend college, but no specific plans for that have yet been made and no evidence was offered as to the probable cost the household would incur when that happens.

## II. DISCUSSION AND ANALYSIS

The exemption laws are enacted to provide relief to the debtor and are liberally construed in favor of the debtor. *In re Schlissler*, 250 B.R. 697, 700 (Bankr. W.D. Mo. 2000); *In re Turner*, 44 B.R. 118, 119 (Bankr. W.D. Mo. 1984). As the party objecting to the exemption, the trustee has the burden of proof that the exemption should not be allowed. Fed. R. Bankr. Proc. 4003(c).

Pursuant to Mo. Rev. Stat. § 513.430(10)(e), a debtor may claim as exempt any payment under, among other things, an annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, subject to certain exceptions which are not relevant here. It is apparent from the statute that in order for the exemption to apply, several conditions must be satisfied: (1) the payments must be received pursuant to a plan or contract of the kind described; (2) payments must be made "on account of illness, disability, death, age or length of service"; and (3) they must be reasonably necessary for the support of the debtor and the debtor's dependents. *Cf. In re Anderson*, 259 B.R. 687, 690 (8th Cir. B.A.P. 2001) (interpreting identical language in 11 U.S.C. § 522(d)(10)(E). There is no question about the first two requirements since the payments are made pursuant to an annuity and on account of Debtor's disability. There is similarly no question that the Debtor's children are dependents. The issue is whether the Debtor's need to use these funds to finance his children's college

5

educations makes those funds "reasonably necessary" for the support of the Debtor and his dependents. Debtor contends that providing for the expenses of his children's college education is necessary for their support, that the amounts which he seeks to apply for that purpose are reasonable and that other courts have so held. The Trustee claims that a college education is not a necessity and that even if it is, there are other ways of financing the educational costs not covered by grants so that the burden of those expenses does not fall entirely on the Debtor's unsecured creditors.

There are no Missouri cases on point or even construing the phrase in question from which the Court might derive guidance. Fortunately, the Court is not entirely without assistance in that there are cases interpreting and applying the same language in 11 U.S.C. § 522(d)(10)(E). In addition, the definition of "disposable income" contained in 11 U.S.C. § 1325(b)(2) requires the court to consider to what extent income received by the debtor is "reasonably necessary" for the support of the debtor and dependents. Cases applying that standard are therefore relevant in this context. *In re Jones*, 55 B.R. 462, 466 (Bankr. D. Minn. 1985). While the context is different, the purpose is the same – to determine how much of the household income may be consumed by the debtor and what portion of that income must be committed to payment of the debtor's unsecured creditors. The purpose of permitting a debtor to exempt payments to be received under an annuity or similar plan is to "protect payments which function as wage substitutes." *In re Skipper*, 274 B.R. 807, 814 (citing *Anderson*, 259 B.R. at 691). That exemption is intended to protect payments that "support basic living requirements." *Skipper*, 274 B.R. at 814 (citing *Anderson*, 259 B.R. at 691); *In re Taff*, 10 B.R. 101, 107 (Bankr. D. Conn. 1981) (in applying the "reasonably necessary" standard, the "appropriate amount to be set aside for the debtor ought to be sufficient to sustain basic needs"). In making this determination, the

courts have considered a number of factors including: (1) debtor's present and anticipated living expenses; (2) debtor's present and anticipated income from all sources; (3) age of debtor and dependents; (4) health of debtor and dependents; (5) debtor's ability to work and earn a living; (6) debtor's job skills, training and education; (7) debtor's other assets, including exempt assets; (8) liquidity of other assets; (9) debtor's ability to save for retirement; (10) special needs of the debtor's dependents; and (11) debtor's financial obligations.  *In re Sawyer*s, 135 B.R. 371, 374-75 (Bankr. W.D. Mo. 1992); *In re Guentert*, 206 B.R. 958, 963 (Bankr. W.D. Mo. 1997).  As the Trustee has observed, these factors are not particularly helpful in this case given the context and the Debtor's proposed use of the annuity payments.  The Court assumes that the Debtor is disabled and is unable, at least for the foreseeable future, to obtain employment and supplement his income in that way.  Debtor's spouse is apparently in a similar condition.   As observed above, Debtor's present and anticipated income and Debtor's present and anticipated living expenses are approximately equivalent.  Debtors' expenses are quite reasonable.  In fact, they live very modestly.  However,  Debtor does not attempt to justify exemption of the annuity payments based on the need to meet recurring monthly expenses.  No evidence was presented as to the Debtor's age, job skills, training or education.  Similarly, no evidence was adduced as to the household's other assets, or their liquidity, or the financial obligations of the Debtors, if any which might survive discharge.

In making the determination as to whether any particular expenditure is reasonably necessary for the support of the Debtor and his dependents, the Court is not guided by any bright line rules.  Approaches vary and so do results.  *In re Nicola*, 244 B.R. 795, 797 (Bankr. N.D. Ill. 2000).  This inherently requires the courts to "engage in the unenviable task of scrutinizing the debtor's schedule of

income and expenses." *Nicola*, 244 B.R. at 797 (citing *In re Johnson*, 241 B.R. 394, 398 (Bankr. E.D. Tex. 1999). The inquiry should be conducted in such a way as to balance the interests of creditors in obtaining repayment of some portion of their claims with the legitimate interest of the debtors in obtaining a fresh start. *In re Gonzalez*, 157 B.R. 604, 608 (Bankr. E.D. Mich. 1993). Some expenditures, such as those for food, clothing, shelter and the like are clearly essential. Others, such as for luxury items, clearly are not. The difficulty "lies in the vast gray area between these extremes." *Gonzalez*, 157 B.R. at 607.

It should not be surprising that this specific issue – whether expenses for the college education of the debtor's children are reasonably necessary – has divided the courts. The Trustee cites *In re Skipper*, in which the court, in a case very similar to this one, denied the debtor's claim of exemption in certain funds which the debtor proposed to use to provide his son with a college education. *Skipper*, 274 B.R. at 820 ("Although Debtor's desire to provide his son with a college education is admirable, the Court cannot hold that a college education is a necessity of life.") *See also, Jones*, 55 B.R. at 467. Debtor seeks to distinguish *Skipper* on the ground that the court's decision was founded on Arkansas cases limiting support to "necessities of life" while Missouri courts recognize that the obligation of support can encompass the expenses of a college education, citing *Burton v. Donahue*, 959 S.W.2d 946 (Mo. App. E.D. 1998). Other courts have found such expenses reasonably necessary and approved them. *In re Scobee*, 269 B.R. 678, 682 (Bankr. W.D. Mo. 2001) (court declined to disallow monthly expenditure of $509.50 paid by debtor to assist 23-year-old daughter in attending college in context of § 707(b) motion); *In re Smith*, 269 B.R. 686, 689 (Bankr. W.D. Mo. 2001) (court declined to disallow expense including amounts attributable to support of 20-year-old daughter

attending college in context of § 707(b) motion). *See also, In re King*, 308 B.R. 522, 533, 534 (Bankr. D. Kan. 2004); *Gonzales*, 157 B.R. at 611; *In re Riegodedios,* 146 B.R. 691, 693 (Bankr. E.D. Va. 1992).

This Court will not go so far as to say that the Debtor may not contribute to the expenses of his children's college education and hold that such expenditures are not "reasonably necessary" for the support of the Debtor or his dependents as a matter of law. As have other courts that have considered the question, while this Court does not necessarily consider a college education to be a necessity, it does find that in most cases it is extremely beneficial and useful not only for utilitarian reasons, in that it enhances the prospects of obtaining more lucrative employment, but also in contributing to a more enlightened population, which is not only valuable in its own right, but also important in a representative democracy. *See King*, 308 B.R. at 533 (citing *In re Awuku*, 248 B.R. 21, 29-30 (Bankr. E.D.N.Y. 2000). It must also be said that the Debtor has not made an unreasonable choice in selecting a college for his son's attendance. Debtor testified that one of the reasons Missouri Western was chosen is that it has a specific program designed to assist students with special needs, a category into which Steven falls as a result of his dyslexia. It does not appear that the costs of attending Missouri Western are unreasonably high. In addition, while the evidence shows that loan programs are available to the Debtors to defray the balance of the costs of their son's college education, the Court will not second guess the decision of the Debtors not to apply for any such loans. The evidence on their income and expenses reveals little or no surplus with which to make payments on student loans, which was the reason given by the Debtor for declining to apply for them. This Court certainly does not want to be in the business of encouraging people to borrow money which they do not reasonably anticipate being

9

able to repay.

On the other hand, the Court must consider all the circumstances in determining whether the amount Debtor proposes to expend, at the expense of his unsecured creditors, in support of his children's college education, is reasonable. In most cases, some level of parental support for the cost of obtaining a college education is both necessary and reasonably expected. Debtor is to be commended for his willingness to support his children's desire to achieve a college education. As noted above, however, this Court must weigh the Debtor's legal and/or moral obligation to provide support for his children's post-secondary education and his obligation to and the reasonable expectations of his creditors. Here, Debtor is essentially asking the Court to have his unsecured creditors finance 100% of the expenses of his children's college education, to the extent not covered by grants, a proposal which the Court does not find to be reasonable.

Some of the cases in which the courts have approved expenses for college education are distinguishable in respects that are relevant here. For example, in *Riegodedios*, the court, in a Chapter 13 context, approved a budgeted expense item for payment of college tuition and rent for Debtor's daughter as reasonable, in substantial part because the debtors' Chapter 13 plan proposed to pay a 41% dividend to their unsecured creditors. *Riegodedios*, 146 B.R. at 693. This case, on the other hand, is a Chapter 7 proceeding in which the Debtors seek to obtain discharge of approximately $200,000 in unsecured debt and in which the annuity payments appear to be the only assets available to fund any recovery to unsecured creditors. In *Gonzalez*, the court similarly approved expenditures for college expenses for the debtor's children, but noted that both children had part-time jobs and also obtained loans. *Gonzalez*, 157 B.R. at 606. In this case, the Debtors do not propose to ask their

children to make any sacrifices to fund their college educations. There is no evidence suggesting that any portion of Steven's anticipated expenses for his first year would be funded by summer or part-time employment. In addition, Steven apparently does not propose to incur any student loans of his own to shoulder part of the burden of his college education. Many students do incur such debt, a fact which the Court knows only too well from adjudicating numerous cases in which debtors seek discharge of such loans when post-education income has failed to meet expectations or other hardships develop. It is not unreasonable, however, to expect that Debtor's children should bear some portion of the cost of financing their education.

Debtor cites the previous decisions in the *Scobee* and *Smith* cases in this district in support of his claim to exempt the annuity payments in their entirety. Neither case supports the position the Debtor takes here. In *Scobee*, a § 707(b) case, the debtor paid a portion of certain expenses of her daughter, who was attending college. The Court held that it would not find that the debtor should not assist her daughter. *Scobee*, 269 B.R. at 682. Likewise, this Court does not propose to hold that Debtor may not assist his children in financing their college education, but that it is not reasonable for the Debtor to pay all of such expenses, at the expense of his unsecured creditors. In *Smith*, also a § 707(b) case, the Court held that it would not disallow living expenses attributable to the presence in the household of debtor's 20-year-old daughter who was also attending college. The case did not involve college tuition or other similar expenses. In addition, the Court, while declining to disapprove the expenses in their entirety, reserved its right to determine their reasonableness under the circumstances. *Smith*, 269 B.R. at 689-90 ("Accordingly, the Court will not disallow living expenses that are claimed by the debtors for their 20-year-old daughter; instead, the Court will consider the

daughter's expenses as a part of the overall consideration of the reasonableness of the debtors' family living expenses.") Likewise, this Court has assessed the reasonableness of the Debtor's proposed expenses under the circumstances of this case.

In addition, while the Debtors are asking that this Court permit them to use the entire $80,000 stream of income available from the annuity payments, the only evidence presented relates to the expenses for the first year of Steven's college education. Beyond the simple assertion that the Debtor anticipates his daughter will attend college, no evidence was presented as to what those expenses might be, what other sources might be available to defray them and how much money might be necessary to finance the balance. In fact, the Court has no assurance that if it approves the Debtor's claim of exemption and authorizes the use of these funds, that they will in fact be used for that purpose.

One other circumstance in this case influences the Court in denying the Debtor's request to exempt all of the annuity payments for college education expense purposes. As noted above, in addition to the yearly amounts and the monthly payments, Debtor received a lump sum payment of $200,000 at the time his claims were settled. In cross-examination, Debtor was unable to credibly account for the expenditure of that money. A portion of that payment went to attorney's fees, although Debtor was unable to identify how much. With the balance, Debtors paid off some debts and bought a house. The house was apparently also financed in part as it has since been lost through foreclosure. There is no evidence that the Debtors have acted in bad faith and the Court does not wish to be unduly critical of their management of the lump sum payment. However, what appears to have been, at worst some imprudent decisions in the use of those funds, or at best an inability to accurately account for the disposition of the funds, is another factor which the Court believes is appropriate to take into

consideration in determining whether it is reasonable under the circumstances of this case to permit the Debtors to use all of the remaining yearly payments due under the annuity policy.

The Court therefore denies the Debtor's request to exempt the remaining annual payments due under the annuity policy in their entirety as being "reasonably necessary" for the support of the Debtor and his dependents. Neither, however, will the Court overrule the exemption in its entirety and prohibit the Debtor from receiving and using any portion of the annuity payments. For all the reasons cited above, the Court sustains the Trustee's objection in part and overrules it in part and will permit the Debtor to exempt the sum of $30,000 from the remaining annuity payments and denies the Trustee's request for turnover to that extent. Debtor's claim of exemption of the remaining balance of the annuity payments is denied and to that extent the Trustee's request for turnover is granted. This division of the proceeds will insure that Steven may begin his college education, that the Debtor's daughter may do likewise and that some additional funds are available to the Debtor either to supplement the monthly annuity payments or provide for additional future college expenses. It also permits the payment of a reasonable dividend to the Debtor's unsecured creditors. In order to facilitate this allocation and distribution of the annuity payments, the Court authorizes and directs Hartford to make the first annual payment of $10,000.00 to the Debtor and likewise to pay the two $10,000 payments due in July 2006 to the Debtor. Hartford is directed to pay to the Trustee the amounts due in July 2007 and all annual payments due thereafter.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated:    July 15, 2005                 /s/ Dennis R. Dow
                                           THE HONORABLE DENNIS R. DOW

UNITED STATES BANKRUPTCY JUDGE

cc: Janice Harder
J. Brian Baehr
Diana C. Carter